UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTA CAMPBELL,

    Plaintiff,

v.                                    Case No. 1:09-cv-255
                                    Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on April 10, 1964 (AR 69).[1] She completed one year of college (AR 125). She alleged a disability onset date of April 5, 2005 (AR 69). Plaintiff had previous employment as a shipping and receiving clerk, cashier and dog groomer (AR 111-1). Plaintiff identified her disabling condition as tendinitis, ruptured disc and bulging disc (AR 120). On October 16, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 12-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 5, 2005 (AR 14). At step two, the ALJ found that plaintiff suffered from severe impairments of: "degenerative disc disease and herniated disc of the cervical spine, status post December 2005 discectomy and fusion at the C6-7 level; right wrist first compartment tenosynovitis, status post May 31, 2005 compartment release and tenosynovectomy; affective disorder; anxiety disorder; and personality disorder" (AR 15). The ALJ also found that plaintiff suffered from medically "non-severe" disorders of: "obesity, right side carpal tunnel syndrome and a history of polysubstance addiction disorder that is in remission" (AR 14). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 16). The ALJ decided at the fourth step that:

> The claimant retains the residual functional capacity to occasionally lift up to twenty pounds, frequently lift and/or carry up to ten pounds, stand and/or walk for six hours in an eight hour day and sit for six hours in an eight hour day. She is limited to occasional climbing of ropes, ladders and scaffolds; and simple, repetitive tasks. The claimant is further precluded from work that would result in or involve vibration; and should avoid work requiring more than minimal contact with the public and supervisors.

(AR 16). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 21). Specifically, plaintiff could perform the following jobs in the local economy: product inspector (8,000 jobs) and hand packager (6,500 jobs) (AR 21).

4

Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act (AR 21-22).

### III. ANALYSIS

Plaintiff does not contest that she is physically able to perform work, testifying that she could work full time, on a regular basis, if her problem "was just physical" (AR 354). *See* Plaintiff's Brief at p. 15. Consequently, plaintiff's appeal is limited to two issues arising from the ALJ's evaluation of her non-exertional mental impairments.

> **A. The Secretary improperly disregarded the opinions of the Plaintiff's primary treating sources and gave more weight to the opinion of a non-evaluating [sic] consultant in direct violation of 20 C.F.R. § 404.1527(d)(1)(0ASDI) [sic];** *Walker v. Secretary HHS***, 980 F.2d 1066, 1070 (6th Cir. 1992).**

Plaintiff identifies various opinions expressed by three treating sources, psychologist Joseph Auffrey, Ph.D., psychiatrist Ashok Gupta, M.D., and family physician Robert Pierce, D.O. Plaintiff also relies on the opinions expressed by Cynthia Hainer, M.A., L.L.P. and Dennis Mulder, Ed. D., who examined plaintiff for the Michigan Disability Determination Service (DDS). Plaintiff contends that the ALJ erred when he disregarded the opinions expressed by the doctors and Ms. Hainer in favor of the opinions expressed by a non-examining agency consultant.[2]

At their consultative examination in April 2006, Ms. Hainer and Dr. Mulder "did not find significant symptoms to warrant a diagnosis of ADHD" and felt that plaintiff's agitation and difficulty focusing "may be due more to a mood disorder and possibly the result of years of alcoholism and Polysubstance abuse" (AR 152). They diagnosed plaintiff as suffering from: major

---

[2] Throughout her brief, plaintiff refers to the findings of a "non-evaluating" consultant or physician. Plaintiff is apparently referring to the findings of the non-examining agency consultant psychologist (AR 128-46).

5

depressive disorder, recurrent; panic disorder without agoraphobia; alcohol dependence, sustained full remission; and history of polysubstance abuse (AR 152).

In May 2006, the DDS non-examining consultant, psychologist Ronald C. Marshall, Ph.D., prepared a mental residual functional capacity (RFC)(AR 128-32) and a psychiatric review technique form (AR 133-46). After reviewing plaintiff's medical records, Dr. Marshall determined that she did not meet the requirements of a listed impairment, and included the following comments: "may work better with minimal contact with the public" and "retains ability to do rote tasks on a sustained basis" (AR 145).

Dr. Gupta, plaintiff's psychiatrist at the Veterans Administration Medical Center, commenced treatment in June 2007 (AR 17). In July 2007, Dr. Gupta assigned plaintiff a Global Assessment of Functioning score of 45 (AR 291-92), which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.[3]

In June 2008, Dr. Pierce, plaintiff's primary family care physician since 1999, testified that a combination of mental and physical problems would preclude plaintiff from the

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. *DSM-IV-TR* at pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

ability to engage in sustained employment because: she cannot handle any type of stressors; she suffers from adult attention deficit disorder; she cannot show up daily and perform for an employer; and she cannot "pull herself together" (AR 262, 266-68). The doctor also testified that plaintiff "is extremely credible" (AR 267).

In April 2008, Dr. Gupta found no evidence of psychosis and diagnosed plaintiff with: bipolar II disorder; attention deficit hyperactivity disorder; history of alcohol and drug abuse (in remission); and borderline personality disorder (AR 295). The doctor did not include a GAF score on that date (AR 295).

In August 2008, Dr. Auffrey, plaintiff's psychologist since April 2005 (AR 17), testified that plaintiff met the requirements of the Listing for Affective Disorders, Listing 12.04, 20 C.F.R. Part 404, Subpart P, Appx 1 (AR 273, 277-80). Dr. Auffrey did not think that plaintiff was capable of sustained gainful employment at that time (AR 277-80).

While plaintiff points out various opinions expressed by the three treating doctors and Ms. Hainer, she does not address the ALJ's review of those opinions other than to state the general rules regarding the ALJ's evaluation of evidence (*e.g.*, that the agency gives more weight to the opinion of an examining source than a non-examining source and the opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician). Plaintiff has done little more than list parts of the medical evidence in her favor and express disagreement with the ALJ's decision to deny her benefits. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court

7

to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

Even if the court were to consider plaintiff's basic argument, i.e., that the ALJ disregarded the opinions of her treating doctors in favor of the opinion of a non-examining consultant, however, her claim would fail.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a Social Security claimant's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994) (the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence"); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, the ALJ set forth an extensive discussion of the medical opinions:

> In evaluating the claimant's functional capacity, I considered the opinions of Dr. Pierce and Dr. Auffrey, who are the treating specialists that have provided long term care. Dr. Pierce and Dr. Auffrey find the claimant incapable of full time work and Dr. Auffrey further finds that the claimant's emotional disorders are of listing

level severity. The state agency consulting physicians, however, provide differing opinions . . . The state agency consulting physician [] opined that the emotional disorders caused mild restrictions of daily activities; moderate difficulties maintaining social functioning; and moderate difficulties maintaining concentration, persistence or pace with no episodes of decompensation.

While Dr. Pierce and Dr. Auffrey are in positions, as the claimant's treating physician and psychotherapist, to provide longitudinal knowledge of the claimant's medical status, their opinions are not consistent or substantiated by the medical evidence. Dr. Pierce reported a diagnosis of ADHD that continued under Dr. Gupta, however, Ms. Hainer and Dr. Mulder reported that [their] mental status examination showed no significant signs to substantiate the diagnosis and treatment. Dr. Auffrey did not find the claimant impaired with ADHD. While Dr. Gupta continued to prescribe medication for ADHD, his mental status examinations do not include abnormal clinical signs and symptoms in support of such disorder. Thus, the diagnosis is not fully supported and diminishes Dr. Pierce's assessment of functional capacity. The medical opinion of Dr. Pierce is therefore given less weight. . . On August 23, 2005, Dr. Pierce noted that "It appears that she is going towards non-employment & even trying to get some type of disability. I would believe that over a period of time she should probably be capable of returning to work["] (Exhibit 1F/55) [AR 182]. Dr. Pierce's medical records are inconsistent with his opinion of an inability to perform sustained work activities and his medica opinion is given less weight.

In his assessment of functional limitations caused by the emotional disorders, Dr. Auffrey indicated marked difficulties maintaining concentration, persistence or pace and marked difficulties with social functioning. His statement during the August 8 deposition, however, also indicated that therapy involved increased social interactions though various methods including attendance in college classes. I find an inconsistency between the marked loss of cognitive function and the recommendation to pursue a college education. Notably, Dr. Auffrey reported improvement of the bipolar disorder through a good response to medication that is more indicative of a retained cognitive ability. Dr. Pierce also reported that the claimant was unable to be retrained, an opinion that contradicts Dr. Auffrey's treatment plan. The medical findings on consultative examination and in the progress notes of Dr. Gupta do not support Dr. Auffrey's assessment. For these reasons, I have also accorded less weight to Dr. Auffrey's opinion.

\*    \*    \*

Dr. Pierce's progress notes reflect ongoing emotional stress due to significant family problems. The claimant continues to pursue daily activities in spite of her emotional symptoms. Medical care has been conservative in nature and not of the type to contraindicate simple, repetitive tasks on a sustained basis. I find, however,

9

that the progress notes and consultative examination report of Ms. Hainer and Dr. Mulder describe irritation, frustration, and passive-aggressive behavior that would indicate minimal contact with the public and supervisors.

The claimant pursues daily activities that support the opinions of the state agency consulting physicians. While the claimant reported that she received assistance with daily chores, she testified that she had been babysitting her three grandchildren for about three to four months prior to the hearing. The claimant described picking up the children, feeding them, dressing them and driving them five days a week. Her ability to care for three young children is consistent with the state agency consulting physicians with respect to her exertional capacity and ability to perform at least simple, repetitive tasks.

Dr. Gupta's medical records reflect a GAF of 45. His assessment, however, is inconsistent with his medical findings. Minimally abnormal findings are noted on mental status examination. While the claimant's medications were changed or adjusted, only therapy was provided without more aggressive care to support the GAF of 45. Therefore, I have also given less weight to Dr. Gupta's opinion.

In light of the above evaluation, I find that the emotional disorders cause mild restrictions of daily activities; moderate difficulty maintaining social functioning; and moderate difficulties maintaining concentration, persistence or pace. I further find that there are no episodes of decompensation.

*   *   *

In his brief, counsel urged that the claimant be found disabled based on Dr. Auffrey's opinion that the emotional disorders were of listing severity or that the claimant be found incapable of sustained work activities based on the opinions of Dr. Pierce and Dr. Auffrey. Counsel cited Dr. Gupta's GAF of 45 and argued that, even were the claimant capable of sedentary exertion, her emotional disorders prevented the capacity for sustained work functions. Based on my evaluation of the evidence, I must reject counsel's arguments.

(AR 18-20).

The ALJ articulated good reasons for not crediting the opinions of Drs. Pierce, Auffrey and Gupta. Contrary to plaintiff's assertion, the ALJ adopted some of the findings of the examining psychologists, Ms. Hainer and Dr. Mulder. Under these circumstances, the ALJ could properly rely on the opinion expressed by the consulting psychologists and the non-examining

psychologist. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence). Accordingly, plaintiff's claim of error should be denied.

> **B. The Secretary may rely on vocational testimony only if the hypothetical questions accurately reflect the plaintiff's exertional and non-exertional functional limitations. In this case, the hypothetical question presented to the Vocational Expert did not accurately reflect the totality of the Plaintiff's exertional and non-exertional limitations.** *Hardaway v. Secretary HHS*, **823 F.2d 922, 927-928 (6th Cir. 1987).**

Plaintiff does not contest the ALJ's first hypothetical question, which established that plaintiff had the physical ability to perform light work (AR 370-71). Plaintiff's Brief at p. 15. In this regard, plaintiff stated in her brief that "[o]f course, the plaintiff testified that she could return to some type of work based on solely her physical limitations ([AR] 354)." *Id.* The first hypothetical question included some mental limitations, i.e., the hypothetical person "would be capable of simple work" and "should have minimum public contact and supervisor contact" (AR 371). Given these physical and mental limitations, the vocational expert (VE) testified that such a person could 14,500 jobs in the local economy (AR 370-71).

Plaintiff apparently rejects the applicability of the first hypothetical question to this case, asserting that the following hypothetical question reflected her "totality of impairments":

> Let me ask you a second hypothetical and this will build on the first. Second hypothetical will take into account the fact that this person is going to be unable to productively persist at work, is going to be missing time, is going to be distracted and will miss production goals or may even miss whole days of work but, to the

11

employer, this is best represented as a loss of days and that loss would be two or more days a month more than that employer would normally allow; would this person maintain competitive employment?

(AR 371-72). In response to this hypothetical question, the VE answered, "No, Your Honor" (AR 372). Plaintiff contends that the ALJ erred when he disregarded the opinion of the VE that she could not maintain competitive employment "based on the totality of the plaintiff's impairments." Plaintiff's Brief at p. 16.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff's claim is without merit. The first hypothetical question included both physical and mental limitations which the ALJ found as credible and listed in his RFC determination. Plaintiff does not explain why the ALJ should have relied upon the mental limitations as set forth in the second hypothetical. As previously discussed, the ALJ properly discounted the various mental impairments identified by Drs. Pierce, Auffrey and Gupta. The ALJ was not required to include these impairments, which he did not find to be credible. *See Stanley*,

39 F.3d at 118; *Blacha*, 927 F.2d at 231. Substantial evidence supports the ALJ's determination that plaintiff could perform 14,500 jobs in the local economy. Accordingly, plaintiff's claim that the ALJ relied on an inacurate hypothetical question should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: June 10, 2010                          /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).